## IN BANCO.—JUNE, 1856.

### HOOKII *et als vs.* C. H. NICHOLSON.

A contract made by a married woman, whereby she engages to perform service for another, is not *per se* void, but may subsist, at least, until the husband shall interfere and put an end to it.

Where a wife is living apart from her husband, her employment to work for a third party, cannot affect the husband's right to her society.

Held, that pl- intiffs had no reason to complain of the defendant's introduction of sewing machines into his establishment, so long as he did not thereby deprive them of an opportunity to earn full wages, by hand sewing, in accordance with their contract.

JUDGE ROBERTSON delivered the decision of the court as follows :

This is a complaint by Hookii and a number of others, workwomen in the employment of the defendant, who is a merchant-tailor in Honolulu. The case comes before us on appeal from the Police Justice of Honolulu, before whom the plaintiffs made their complaint of misusage, &c., and prayed to be discharged from their obligations of

service to the defendant, under Section 28th of the "Act for the government of masters and servants," passed in the year 1850. The Police Justice, after hearing the case, gave judgment in favor of the plaintiffs, and from that decision the defendant appealed.

After a careful consideration of all the evidence adduced before us, we are clearly of the opinion, that the plaintiffs have entirely failed to substantiate the charge of misusage or ill-treatment made against the defendant. The only evidence given which we think tends in any degree to sustain this charge, is that in regard to the defendant's having struck Hookii on one occasion, of which she complained at the time to the Police Justice, who heard and disposed of the matter.

It is contended, however, on the part of the plaintiffs, that most, if not all of them, were at the time they entered into the contract with the defendant, married women, and that therefore their contracts are void, unless made with the express consent of their husbands, given in writing. There can be no question as to the general principle of law, that the husband is exclusively entitled to the society and service of the wife, and that no contract made with the wife in contravention of, or affecting the rights of the husband is valid without his consent. But, we are of opinion that, in such a case as the one now before us, the husband's consent need not, necessarily, be signified in writing, neither is it indispensable, we think, that his consent should have been given at the time the contract was made, for if he has subsequently approved and enjoyed the benefit of the contract, this will be sufficient. Further, a contract made by a wife, whereby she engages to perform service for another, is not *per se* void, but may subsist, at least, until the husband shall interfere and put an end to it. The question as to whether or not the husbands of those plaintiffs in the present case, who were married at the time of entering into the contract, supposing them subsequently to have consented to or enjoyed the benefit of the contract, can, now, come forward and put an end to it, does not arise as yet, because this is not a suit brought by the husbands, but by the wives, who cannot be permitted so to avoid the contracts they have made, and thus take advantage of their own wrong, to the prejudice and damage of the defendant.

It appears by the testimony before us that two of the plaintiffs, viz: Malaea and Hookii, were not married at the time of contracting, but the latter has been married since, and it is now argued that it was necessary to obtain her husband's consent in order to the subsistence of the contract after the date of the marriage, unless it has been proved that he had full knowledge of the plaintiff's previous agreement to work for the defendant, at the time of the marriage. In regard to this point we consider the circumstances of the case as sufficient, in the absence of any proof of express objection on the part of the husband, to raise an irresistible inference that when he married the plaintiff, he must have been aware of her agreement to serve the defendant. It seems altogether incredible that he should have married her, without the slightest inquiry into her circumstances, and position in life.

The evidence before us shows that the husbands of some of the plaintiffs accompanied them to the defendant's place of business, were present when they agreed to work for him, and gave their con-

sent, either verbally or in writing; while others are shown to have tacitly acquiesced in their wives' engagements, and to have received a portion of their earnings from time to time, and there is no proof that the husband of any of the plaintiffs, save one, viz: Kanikolea, ever attempted to put an end to his wife's contract with the defendant. It is also in proof that several of the plaintiffs have been separated, and living apart from their husbands, for longer or shorter periods, and, clearly, in their case, the fact of their being employed from day to day in the service of the defendant, cannot affect in any degree, the rights of their husbands.

But, the greatest source of dissatisfaction, and the one which doubtless led to the promotion of this complaint, appears to be the introduction of a sewing machine into the defendant's workshop, subsequently to the date at which most of the plaintiffs were hired by him. It is contended on their part, that the interference of this new power was not contemplated at the time they contracted, and cannot now be allowed to work to their prejudice. We grant that the defendant is not at liberty, by the introduction of the machine, to violate any part of his agreement with the plaintiffs, by monopolizing all the work so as to keep them idle, and thus deprive them of an opportunity to earn as much wages as they can, or by charging for the share of work performed by the machine, anything more than a fair proportion of the amount allowed for the making of any particular garment. But, with these conditions, we think the defendant has a perfect right to avail himself of any new invention or improvement, introduced into his line of business. It appears to have been customary in the defendant's establishment, as in that of others of the same character, at times to divide the work, especially such work as was required to be done with dispatch, between several hands, which of course led to a corresponding division of the price, according to a scale well understood by the parties. And such appears to have been the practice pursued by the defendant, subsequently to his employment of the sewing machine, which in the usual division of labor, has been made to do the work of one or more hands, and for whose services the defendant has accordingly retained a certain proportion of the price, corresponding in each case with the amount of its work. We are at a loss to perceive what good ground of complaint there is against the defendant, on account of the machine, which would appear by the testimony of his workmen, to perform upon some species of garments by far the greater part of the work, while the women who execute the balance get half of the price.

We are of the opinion that the contracts of the plaintiffs with the defendant, are of a character highly beneficial to the former, by affording them constant employment, in an honest, useful branch of business, and so long as the defendant observes his agreement in good faith, he is entitled to the benefit of the pains he has taken to train the plaintiffs to industry. At the same time the defendant must be careful not to tyrannise in any degree over the plaintiffs, but to treat them with kindness and respect.

The decision below is reversed.

CHIEF JUSTICE LEE concurred.

Mr. Marsh for plaintiffs.

Mr. Bates for defendant.